# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff-Respondent,<br><br>v.<br><br>MARK ALAN SALTZER,<br><br>                Defendant-Petitioner. | Case No. 1:14-cv-00451-BLW<br>         1:13-cr-0172-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Mark Alan Saltzer's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) and (Crim. Dkt. 49), as well as a Motion to File Certain Documents Under Seal (Civ. Dkt. 2).  Having reviewed the Motion, the Government's Response (Civ. Dkt. 9), and Saltzer's Reply (Civ. Dkt. 12), as well as the underlying criminal record, the Court enters the following order dismissing the § 2255 Motion. In light of this conclusion, the Motion to File Certain Documents Under Seal (Civ. Dkt. 2) shall be denied as moot.

## BACKGROUND

In August of 2012, Saltzer was arrested and charged in state court with ten counts of Sexual Exploitation of Children—each of which carried a maximum punishment of thirty years in prison. *Gov.'s Resp.*, p. 2, Civ. Dkt. 9; *Peterson Aff*. ¶ 11, Civ. Dkt. 9-1.

**MEMORANDUM DECISION AND ORDER - 1**

Soon thereafter, Saltzer retained Charles Peterson to represent him. *Peterson Aff.*, ¶ 6, Civ. Dkt. 9-1. During their first meeting, Saltzer informed Mr. Peterson that he had confessed to the investigators who interviewed him, that he had been active in a child pornography-trading group on the Internet, and that the police had seized his computers and would soon discover the scope of his involvement. *Id.* at ¶ 7. Saltzer also indicated that he was a school counselor at Meridian Middle School, and that he had been having sex with a former student—a seventeen-year-old male who had been at Saltzer's home when police served the warrant. *Id.* at ¶ 8. Mr. Peterson reports that Saltzer's primary objectives at that point were to minimize prison time and to avoid time in the Idaho state prison system. *Id.* at ¶ 10. In light of the vast amount of electronic evidence and Saltzer's admissions to investigators, Mr. Peterson concluded that Saltzer's best chance to achieve those objectives would be to cooperate. *Id.* Mr. Peterson negotiated a deal on Saltzer's behalf whereby Saltzer would cooperate fully with federal investigators, and plead guilty to the federal charges. In exchange, the state charges were dismissed.

On July 30, 2013, pursuant to a Rule 1 l(c)(l)(B) plea agreement, Saltzer pleaded guilty to an Information that charged him with one count of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a). *Information*, p. 10. Crim. Dkt. 9. The plea agreement identified eleven minors, ages 10 through 17, whom Saltzer had sexually exploited over roughly a decade. *Plea Agreement*, pp. 7–14, Crim. Dkt. 2. The plea agreement also stated that investigators had located evidence on Saltzer's media that

showed he had recorded sexually explicit videos of approximately fifty young males. *Id.* at p. 7.

On November 12, 2013, Saltzer was sentenced by the Court to 348 months' incarceration, based on a guideline range of 324–360 months, followed by 20 years of supervised release. *Judgment*, Crim. Dkt. 37; Crim. Dkt. 36. Saltzer did not file an appeal from the sentence, but now brings a 28 U.S.C. § 2255 motion to vacate the sentence based upon a claim of ineffective assistance of counsel.

On October 23, 2014, Saltzer timely filed his § 2255 Motion alleging eight grounds of ineffective assistance of counsel. In particular, Saltzer alleges that counsel provided ineffective assistance of counsel when he (1) did not object to the testimony of Lisa Austin at sentencing hearing; (2) did not cite to a particular 9th Circuit case and did not point out that the Court had authority to grant a larger variance than requested in the Government's USSG 5K1.1 motion; (3) did not object to the Government's alleged breach of the plea agreement at the sentencing; (4) did not call expert witness Dr. Chad Sombke at the sentencing hearing; (5) did not argue at the sentencing that the Sentencing Guidelines applying to possession, production, and distribution of child pornography should be given less weight; (6) failed to argue that the Guideline sentences were longer than necessary to achieve a just sentence; and (7) failed to argue that the nature of Saltzer's crime would subject him to more dangerous conditions of confinement.  Finally, Saltzer also argued that alleged errors 1–7 cumulatively constitute ineffective assistance of counsel. *§ 2255 Mtn.*, Crim. Dkt. 1. Saltzer asks the Court to vacate his sentence and

MEMORANDUM DECISION AND ORDER - 3

set a new sentencing date.[1] Generally, the Government responds that there was no

deficient performance on the part of Mr. Peterson, or any resulting prejudice in Saltzer's

sentencing.

## STANDARD OF LAW

### 1. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may

grant relief to a federal prisoner who challenges the imposition or length of his or her

incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws

of the United States;" (2) "that the court was without jurisdiction to impose such

sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and

(4) that the sentence is otherwise "subject to collateral attack."  28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that a federal

district court judge must dismiss a § 2255 motion "[i]f it plainly appears from the motion,

any attached exhibits, and the record of prior proceedings that the moving party is not

entitled to relief."  "Under this standard, a district court may summarily dismiss a § 2255

motion only if the allegations in the motion, when viewed against the record, do not give

---

[1] In the alternative, Saltzer requests an evidentiary hearing on his § 2255 motion. An evidentiary hearing is not necessary in this case, because the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

MEMORANDUM DECISION AND ORDER - 4

rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011) (citation omitted).

If the Court does not dismiss pursuant to Rule 4(b), the Court shall order the Government "to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

The Court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes following Rule 8 of the Rules Governing Section 2254 Proceedings incorporated by reference into the Advisory Committee Notes following Rule 8 of the Rules Governing Section 2255 Proceedings.

If the Court does not dismiss the proceeding, the Court then determines under Rule 8 whether an evidentiary hearing is required. The Court need not hold an evidentiary hearing if the issues can be conclusively decided on the basis of the evidence in the record. *See Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).

**2. Ineffective Assistance of Counsel**

The well-established two-prong test for evaluating ineffective assistance of counsel claims is deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U. S. 668 (1984). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

MEMORANDUM DECISION AND ORDER - 5

In order to establish deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id*. at 689.  This is so because for the defendant, "[i]t is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence. . . ." *Id.*  For the court, "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (discussing *Strickland*).

In order to establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  The *Strickland* standard is "highly demanding." *Kimmelman v. Morrision,* 477 U.S. 365, 381–82, 386 (1986) (noting that the court should "assess counsel's overall performance throughout the case" when evaluating whether his assistance was reasonable).

Both prongs of the *Strickland* test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).

Whether or not counsel's performance was deficient is irrelevant if there was no prejudice as both of *Strickland*'s prongs must be met to be entitled to relief. In evaluating

MEMORANDUM DECISION AND ORDER - 6

an ineffective assistance of counsel claim, a court may consider the performance and prejudice components of the *Strickland* test in either order. *Strickland*, 466 U.S. at 697.

As recently reiterated by the Supreme Court, a defendant's right to effective assistance of counsel has long been held to apply to the plea process. *See Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same *Strickland* standard applies to claims of ineffective assistance of counsel at the plea stage. *Hill*, 474 U.S. at 58.

## DISCUSSION

Here, Saltzer seeks to have his sentence vacated based on eight grounds of ineffective assistance of counsel. At the outset of its discussion, the Court notes the high level of deference given to attorneys and their decisions during the course of representation. Mr. Peterson is an experienced criminal defense attorney who has practiced in Boise for 20+ years and sits on the Idaho Supreme Court criminal rules committee. This is not to say that Mr. Peterson is infallible, but to show that he does have significant experience in criminal law, that he is a professional, and that his strategic decisions during the course of representation should not be disregarded frivolously. In the "harsh light of hindsight" it is easy to guess how things could have gone "if only . . .", but the reality is that the strategic choices attorneys make as to how to defend a case are "virtually unchallengeable." *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). "Because advocacy is an art and not a science, and because the adversary system requires

MEMORANDUM DECISION AND ORDER - 7

deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.* at 681. With this theme in mind, the Court will address each of the eight allegations.[2]

      1.  Testimony of Lisa Austin

At Saltzer's sentencing, Lisa Austin was allowed to make an unsworn statement on the record, and was not subject to cross examination. Ms. Austin was the principal at Meridian Middle School where Saltzer was employed up until his arrest. At sentencing, the Government explained that Ms. Austin wished to address the Court in order to respond to the numerous character letters that were submitted in writing on Saltzer's behalf. *Sent. Trans.* Civ. Dkt. 9-2, p. 5, ll. 21–24. The Court explained that it generally allows family members and friends to offer statements to the Court, unless there is an objection. *Id*. p. 6, ll. 9–11. The Court then inquired whether the Defendant had an objection to Ms. Austin offering an oral statement. *Id*. at ll. 23–24.  Mr. Peterson

_____

[2] As an aside, a defendant may waive his statutory right to file a § 2255 motion challenging his sentence. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993), *cert. denied*, 508 U.S. 979 (1993). In those cases, the plea agreement must expressly state that the right to bring a § 2255 motion is waived in order for the waiver to be valid. *United States v. Pruitt*, 32 F.3d 431 (9th Cir. 1994) Here, Saltzer's signed plea agreement specifically states that his right to file a § 2255 motion is waived except for a § 2255 motion alleging ineffective assistance of counsel based solely on information not known to him at the time the sentence was imposed. *Plea Agreement*, Crim. Dkt. 2, pp. 26–27. None of the allegations Saltzer now advances were unknown to him at the time his sentence was imposed. Thus, at first blush, it would appear that Saltzer has waived his right to make the arguments he now makes. However, the Government has not argued that the waiver provision in Saltzer's plea agreement should now preclude his claims. And, "[t]his court will not address waiver if not raised by the opposing party." *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 8**

responded that he had no objection. *Id*. at l. 25. It is this failure to object that Saltzer now alleges constitutes ineffective assistance of counsel. Saltzer argues that the testimony Ms. Austin put forth was "extremely prejudicial" and "influenced and moved the Court to impose a harsher sentence than otherwise." *Def.'s Brief*, Civ. Dkt. 1, p. 4. In the alternative, Saltzer argues that it was ineffective for Mr. Peterson not to demand that Ms. Austin be placed under oath and subject to cross-examination. *Id*.

According to Mr. Peterson, the decision to not object to Ms. Austin's statement was a strategic one. He states that "[a]n objection would not have changed anything for Mr. Saltzer, and he was better off, in my view as his lawyer, to not make more of what was axiomatic—school counselors enjoy the trust of their profession and community and actions like Mr. Saltzer's do real harm to those in both." *Peterson Aff*., Civ. Dkt. 9-1, p. 7. Mr. Peterson also explains that "[t]here was nothing to gain from requiring Ms. Austin to take an oath and then be subjected to cross-examination because the documents offered in mitigation invited a response. Ms. Saltzer's mitigation centered on his service to otherwise within the community, including students." *Id*. In other words, "[c]ross – examination would not have changed the very public perception that he was literally and figuratively 'the fox in the henhouse.'" *Id*.

Saltzer's claim for ineffective assistance of counsel for this failure to object—or, in the alternative, to place Ms. Austin under oath and subject her to cross examination— is subject to dismissal because it fails to satisfy either *Strickland* prong. As the Court indicated at the sentencing, Ms. Austin's statement was akin to a character letter, only in

MEMORANDUM DECISION AND ORDER - 9

oral form. *Sent. Trans.*, Civ. Dkt. 9-2, p. 6, ll. 15–24. The thrust of Ms. Austin's statement was that Saltzer's actions were especially reprehensible because he was in a position of authority and trust as a school counselor, and that his actions hurt not only his students— perhaps irreparably—but the reputation of his former employer and all who worked with him. Not to diminish Ms. Austin's statement, but this was information the Court easily gleaned from the record. As the Court noted before it imposed Saltzer's sentence, this was one of the "most unsettling cases" that the Court has ever encountered. *Id.*, p. 47, l. 12.

As one example of just how unsettling this case was, Saltzer's plea agreement identified eleven minors, ages 10 through 17, whom Saltzer had sexually exploited over roughly a decade. Crim. Dkt. 2, pp. 7–14. The plea agreement also stated that investigators had located evidence on Saltzer's media that showed he had recorded sexually explicit videos of approximately fifty young males. *Id.* at 7. If Saltzer had been fully prosecuted for all of these crimes in either state or federal court, he very likely could have faced a life sentence. Saltzer's crimes spoke for themselves—Ms. Austin's statement was self-evident and made no difference when the Court imposed the sentence.

Not only did no prejudice result from Mr. Peterson's failure to object or subject Ms. Austin to cross, but not doing so does not constitute deficient performance. As explained, Ms. Austin did not provide any information that was not readily ascertainable from the record. Accordingly, it was reasonable for Mr. Peterson to not object, since an

**MEMORANDUM DECISION AND ORDER - 10**

objection would have only required that Ms. Austin take the witness stand, where her damning observations would have had the further force of sworn testimony.

Moreover, not insisting that Ms. Austin be placed under oath and subject to cross examination is a classic example of a "virtually unchallengeable" strategic decision. *See Strickland*, 466 U.S. at 690.  Because Saltzer attempted to mitigate his sentence by emphasizing his service to others, including students, a vigorous cross-examination of Ms. Austin would almost certainly have backfired. Indeed, more testimony from Ms. Austin would have served only to further highlight that Saltzer's motives in "serving others" were far from altruistic. In sum, neither *Strickland* prong is satisfied here and this claim will be dismissed.[3]

  2.  Failure to Cite *United States v. Udo*

Next, Saltzer claims that Mr. Peterson was ineffective by failing to cite to *United States v. Udo*, 963 F.2d 1318 (9th Cir. 1992), and by not urging the Court to impose a much greater downward variance because of Saltzer's cooperation. *Udo* stands for the

_____

[3] Mr. Peterson states that his decision to not object to Ms. Austin's testimony was made "after first consulting with Mr. Saltzer." *Peterson Aff.*, Civ. Dkt. 9-1, p. 7. Saltzer disputes this. He states that Mr. Peterson "did not discuss the matter with me at all." *Saltzer Dec.*, Civ. Dkt. 12-1, p. 2. Saltzer has also provided the declaration of Cheryll Salzburg, a friend of his who attended his sentencing. *See Salzburg Dec.*, Civ. Dkt. 12-3. Ms. Salzburg states in her declaration that she "paid close attention to the sentencing proceeding" and "[a]t no time did [she] see Mr. Peterson consult with Mark Saltzer before Mr. Peterson told the court that he had no objection to the prosecutor's request to have Ms. Austin address the court." *Id*. at p. 1. Taking Saltzer's version of events as true, the result remains the same. A failure to consult as alleged here does not rise to the level of ineffective assistance of counsel—it was not deficient performance to not fight the admittance of what amounted to an oral character letter; nor, again, did any prejudice result from Mr. Peterson's alleged failure to consult Saltzer on this matter.

**MEMORANDUM DECISION AND ORDER - 11**

proposition that once the government files a motion for downward departure based on

defendant's substantial assistance, the district court has the discretion to grant a

downward departure to a greater extent than is recommended by the government. *Udo*,

963 F.2d at 1319.

The record indicates that Mr. Peterson, while not citing to *Udo* specifically,

nonetheless argued for a sentence between 180 and 360 months. Such a sentence was less

than the guideline range and would have been tantamount to more than a two-point 5K1.1

reduction.

Within his sentencing memorandum, Mr. Peterson argued that in moving for only

a two-level downward departure, the Government was improperly focusing on the value

of the information provided and whether it could be used in future prosecutions, rather

than Saltzer's cooperation as a whole. *Sent. Mem.* Crim. Dkt. 35, p. 16. Mr. Peterson

contended that a mere two-level departure was insufficient. He argued that Saltzer gave

all of the information he had to investigators, and offered to do anything else to assist

them. *Id.* Mr. Peterson noted that Saltzer also handed over passwords and usernames,

explained how the child pornography sharing group functioned, and provided the

identities of his victims. *Id.* at 15. In closing, Mr. Peterson stated: "A two level reduction

for substantial assistance in this case is really of little consequence in the final analysis. A

just sentence requires more." *Id.* at 18.

Further, at the sentencing hearing, Mr. Peterson stated:

**MEMORANDUM DECISION AND ORDER - 12**

I've asked the court at the end of that sentencing memorandum to impose a sentence of 180 months. But Mr. Peters is absolutely right. It's not likely, based on the reduction that would represent, that the court would do that, and it certainly isn't something that my client expects. But there is a number that's less than 360 that is adequate to meet all the requirements under 3553(a), and I would suggest to the court that some number less than 360 months is sufficient in this case.

*Sent. Trans.* p. 36, ll. 3–12. Mr. Peters, attorney for the Government, had pointed out

earlier that:

[I]f the court were to accept the defense's recommendation of a sentence of 180 months, that would be the equivalent of reducing the defendant's offense level, which the probation officer correctly calculated at 52. . . . But it would be the equivalent of reducing the defendant's offense level from 52 adjusted downward to 43 by rule to level 35. To accomplish that, the court would have to exercise its discretion to effectively disregard nearly all—not all but nearly all of the individualized aggravating factors described in the sentencing guidelines that pushed that sentencing range so high.

*Id*. p. 22, ll. 9–21.

As the foregoing demonstrates, there was a discussion at the sentencing about the Court's ability to exercise its discretion and reduce Saltzer's offense level more than recommended by the Government.

In sum, Mr. Peterson was not ineffective in not citing to *Udo* specifically when he argued both in his sentencing memorandum and at the hearing that a downward departure of two levels based on substantial assistance did not adequately represent the amount of assistance Saltzer gave. Additionally, the discussion at the hearing plainly recognizes the Court's discretion to reduce the defendant's offense level. Finally, even if the attorneys had not reminded the Court of its discretion at the hearing, no prejudice would have

MEMORANDUM DECISION AND ORDER - 13

resulted because the Court needed no reminder. It is well-established—and well-known

to the Court—that once the government files a motion for downward departure based on

defendant's substantial assistance, the district court has the discretion to grant a

downward departure to a greater extent than is recommended by the government.

Accordingly, this claim also fails.

      3.  <u>Plea agreement breach</u>

Third, Saltzer alleges that Mr. Peterson was ineffective by not objecting to the

Government's alleged breach of the plea agreement. Saltzer alleges that the plea

agreement was breached because, while the Government moved the Court for a two-level

reduction in offense level based on Saltzer's cooperation, "it denigrated that very

cooperation" by not asking for a larger reduction. Civ. Dkt. 1, p. 6.

A plea agreement is construed as a contract between the prosecutor and the

defendant. *United States v. Gonzalez-Melchor*, 648 F.3d 959, 963 (9th Cir. 2011) (citing

*United States v. Streich*, 560 F.3d 926, 929-30 (9th Cir. 2009)). Accordingly, it is

governed by traditional contract law standards or principles. *United States v. Clark*, 218

F.3d 1092, 1095 (9th Cir. 2000). Just as in contract law "[i]f 'the terms of the plea

agreement on their face have a clear and unambiguous meaning, then this court will not

look to extrinsic evidence to determine their meaning.'" *Streich*, 560 F.3d at 930 (citation

omitted); *see also Clark*, 218 F.3d at 1095. That said, if there is an ambiguity, the court

will examine extrinsic evidence such as the facts of the case to determine what the parties

reasonably understood and resolve the ambiguity. *Id*. Here, there is no ambiguity.

**MEMORANDUM DECISION AND ORDER - 14**

Tellingly, Saltzer does not point to any particular portion of the plea agreement

that was allegedly breached. The plea agreement states:

> If the Government determines, in good faith, that the defendant's
> cooperation amounts to "substantial assistance" in the investigation of
> others, the Government will request that the Court depart downward from
> the applicable sentencing range, pursuant to USSG § 5K1.1 and/or any
> mandatory minimum sentence, pursuant to 18 U.S.C. § 3553(e).
>
> . . .
>
> The Government's final decision whether to file motions pursuant to §
> 5K1.1 and/or 18 U.S.C. § 3553(e) will be made after evaluating the
> defendant's cooperation with regards to: 1) the significance and usefulness
> of the defendant's cooperation, 2) the truthfulness, completeness, and
> reliability of any information or testimony provided by the defendant, 3) the
> nature and extent of the defendant's assistance, 4) any injury suffered, or
> any danger or risk of injury to the defendant or defendant's family resulting
> from the defendant's cooperation, and 5) the timeliness of the defendant's
> cooperation. The Government's specific recommendation will turn on the
> facts of the case, the sentence that likely would have been imposed absent
> an agreement, and the extent and value of the cooperation provided.

*Plea Agreement*, Crim. Dkt. 2-1, p. 27.

Here, the Government moved for a two-level downward departure based on

Saltzer's substantial assistance, from the calculated USSG offense level of 43, to offense

level 41. Crim. Dkt. 23, p. 1. Mr. Peters's declaration filed in support of the motion

explained that Saltzer's identification of child victims was valuable, as was his

confession that he was the producer of a widely distributed child pornography series

known as the "ResArena" series. *Id*., p. 9, ¶ 9. On the other hand, Mr. Peters explained

that Saltzer did not disclose any new members of the internet chat group who were not

already known to law enforcement, and that it was not anticipated that Saltzer would be

**MEMORANDUM DECISION AND ORDER - 15**

asked to testify in any other proceedings related to his cooperation. *Id*. at pp. 9–10. The plain language of the plea agreement did not mandate that the Government seek more than a two-level departure; it required only that the Government make its own good faith determination whether to file a 5K1.1 motion based on the factors enumerated above. The Government did just this.

Because the Government did not breach the plea agreement, Mr. Peterson could not have been ineffective by failing to object to any so-called breach. Similarly, no prejudice could result from this alleged failure. This claim is dismissed.

    4.  <u>Dr. Sombke's testimony</u>

Next, Saltzer claims that Mr. Peterson was ineffective because he failed to call Dr. Chad Sombke, who performed Saltzer's psycho-sexual evaluation, to testify at the sentencing hearing. Saltzer takes issue with the Court's finding that Saltzer's risk of recidivism was "substantial" when Dr. Sombke thought the risk was "moderate."

Prior to the sentencing, the Court had reviewed Dr. Sombke's evaluation of Saltzer, as well as the Presentence Report, which included Dr. Sombke's opinion that Saltzer's risk of recidivism was "moderate." But at the sentencing hearing, the Court noted the following:

> The problem that the defendant has, the conduct in which he has engaged has lasted, as I noted, since 1989, which means it's deeply embedded in the defendant's makeup. . . . The likelihood of recidivism in this case, I think, is substantial. I would say that in psychosexual evaluations, a medium risk is what I think was identified here. One can view that as a cup half empty or a cup half full. My experience has been it's probably much more of a kind of a negative light because so often the

**MEMORANDUM DECISION AND ORDER - 16**

psychosexual evaluators, I think, tend to think that the chances for successful counseling is very high in almost every case. I think it is—I won't say a rare case, but I think certainly it's—that the norm is that for the psychosexual evaluator to suggest that the defendant poses a low risk of reoffending.

There is the hands-on abuse with the defendant's victims, which again is somewhat unusual. The defendant also was involved in a very sophisticated methodical process in which he not only groomed the victims in this case, but also used technology as a means of disguising his age and gender to allow him to have access to victims that otherwise he would not have had access to.

He is also the member of a clandestine group whose objective was to not only engage in this conduct, but to come up with ways in which they could avoid detection.

So, as I balance these factors, it's not even a close call. This, to me, is one of the most unsettling cases that I've had to deal with for all of the aggravating reasons that I have mentioned in this case.

*Sent. Trans.* Civ. Dkt. 9-2, p. 46, ll. 7–26; p. 47, ll. 1–14.

Now, in conjunction with his reply brief, Saltzer filed the declaration of Dr.

Sombke. *See Sombke Dec.*, Civ. Dkt. 12-2. There, Dr. Sombke states in part:

Had I been called as a witness at the sentencing hearing, I would have elaborated on my reasons for reaching the conclusion I did. I would have explained in detail why I concluded that Mr. Saltzer was a moderate risk to recidivate, rather than a "substantial" risk to do so. I could also have demonstrated to the Court that in appropriate cases I have not hesitated to conclude that certain persons were indeed a "substantial" risk to recidivate.

*Id*. at ¶ 5.

Mr. Peterson states that his decision not to call Dr. Sombke was tactical. *Peterson*

*Aff.*, Dkt. 9-1, p. 8, ¶ 30. He states that placing Dr. Sombke on the stand—and subject to

cross-examination—would have been more damaging than beneficial because "Mr.

Saltzer's involvement with the seventeen-year-old former student during the summer

**MEMORANDUM DECISION AND ORDER - 17**

months leading up to his arrest would have been subject to greater scrutiny." *Id*. Mr. Peterson also states that Saltzer was involved in making the decision not to place Dr. Sombke on the stand, and that Dr. Sombke agreed with Mr. Peterson's assessment at the time that if pressed on cross-examination, his answers would negatively impact Saltzer's likelihood of a lesser sentence. *Id*. Saltzer disputes this account. He states that Mr. Peterson told him Dr. Sombke does not testify in cases like his, "and no further discussion took place." *Saltzer Dec*., Civ. Dkt. 12-1, p. 3, ¶ 8. For his part, Dr. Sombke does "not have a specific memory of what was said during that conversation" with Mr. Peterson. *Sombke Dec.*, Civ. Dkt. 12-2, p. 2, ¶ 1.

Whether Mr. Peterson did or did not consult with Saltzer about putting Dr. Sombke on the stand is irrelevant because his refusal to do so plainly falls "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. Mr. Peterson's concerns about opening Dr. Sombke up to cross examination were reasonable and valid. Providing Dr. Sombke's evaluation through his report only ensured that particularly damning facts—including Saltzer's sexual relationship with a seventeen-year-old former student—were not further highlighted by the Government on cross examination.

Moreover, no prejudice resulted from Mr. Peterson's failure to put Dr. Sombke on the stand. The Court was free to reach a different conclusion than Dr. Sombke regarding recidivism, and it did so based on the more than ample evidence in the record. The behavior that spanned decades, the hands-on abuse that occurred, the methodical

MEMORANDUM DECISION AND ORDER - 18

grooming processes utilized by Saltzer, and his abuse of positions of power were all factors that led the Court to conclude his risk of reoffending was "substantial." Further explanation from Dr. Sombke regarding why he concluded Saltzer's risk of reoffending was merely "moderate" would not have changed the Court's conclusion that it was more so. Accordingly, this claim must likewise be dismissed.

     5.  <u>Failure to argue child pornography guidelines should be given less weight</u>

Next, Saltzer alleges that Mr. Peterson was ineffective because he did not make what is commonly referred to as a *Kimbrough* argument; that is, an argument that child pornography guidelines "are not a product of the United States Sentencing Commissions' characteristic institutional role and should therefore be given less weight." Civ. Dkt. 1, p. 7. This claim must be dismissed because (1) Mr. Peterson did in fact make this very argument; (2) it is an argument largely inapplicable to child pornography *production* and hands-on molestation cases, as was the case here; and (3) the Court was aware of its discretion to depart from the guidelines based on a disagreement in policy, but chose not to do so in this case.

The case of *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct 558 (2007) stands for the proposition that a district court has the authority to vary from the crack cocaine Guidelines based on a policy disagreement with the Guidelines themselves. *See U.S. v. Henderson*, 649 F.3d 955, 959–60 (9th Cir. 2011). Later courts have held, however, that *Kimbrough*'s rationale is not limited to the crack cocaine Guidelines. *Id.* 649 F.3d at 960. The Ninth Circuit has held that "similar to the crack cocaine Guidelines, district courts

**MEMORANDUM DECISION AND ORDER - 19**

may vary from the child pornography Guidelines, § 2G2.2, based on a policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id*. at 963. Section 2G2.2. applies when the defendant receives, transports, ships, solicits, advertises, or possesses material involving the sexual exploitation of a minor. Here, however, Saltzer was sentenced under § 2G2.1. That provision governs the sexual exploitation of a minor by *producing* sexually explicit material.

Saltzer argues that had a *Kimbrough* argument been made, "the Court would have been made aware of the flaws in the formulation of the applicable guidelines and would likely have placed less weight on the recommended guideline sentencing range that it did." This argument fails for at least three reasons.

First, Mr. Peterson cited to *Kimbrough* in his sentencing memorandum and argued that the "guidelines for child pornography cases have been the subject of much debate," and that the "range for child pornography has steadily increased without any real reason except, perhaps, politics." Crim. Dkt. 35, pp. 13–14.

Second, as alluded to above, *Kimbrough* and its progeny governs child pornography possession and distribution cases. As the Government points out, none of those cases involve the production of child pornography, hands-on molestation of minors, or distribution of self-produced child pornography, all of which occurred here. Again, Saltzer was sentenced under § 2G2.1 (production), not § 2G2.2 (possession, distribution).

**MEMORANDUM DECISION AND ORDER - 20**

Finally, the argument Saltzer is now making is not a novel one. The Court is—and was at the time of sentencing—well aware of *Kimbrough*'s rationale and application to child pornography guidelines. Indeed, the Court has departed from such guidelines when appropriate; for example, this Court will often not apply the suggested two-level enhancement when an offense involves the use of a computer pursuant to § 2G2.2(b)(6), since almost all child pornography possession cases now involve the use of a computer.

In sum, Mr. Peterson was not ineffective in this regard because he did raise the very argument that Saltzer claims he did not. Even if he had not, that failure would not have constituted ineffective assistance because *Kimbrough* and its progeny are relevant to child pornography possession and distribution cases—not necessarily child pornography production cases sentenced under § 2G2.1. Finally, no prejudice could have possibly resulted from this alleged failure because the Court was aware of its discretion to depart from the guidelines and has done so before. This claim is dismissed.

6.  <u>Guidelines longer than necessary</u>

Saltzer next argues that Mr. Peterson provided ineffective assistance "by not arguing that the advisory guidelines in general, and specifically as applied in this case, were too long and greater than necessary to achieve the purposes of sentencing." Civ. Dkt. 1, p. 8. Saltzer points to six specific arguments that Mr. Peterson did not make, but which he posits would have led the Court to impose a lesser sentence: (1) current federal guidelines have led to an ever-increasing rate of incarceration; (2) Americans imprison more of our citizens—and for longer periods of time—than any other country; (3) certain

MEMORANDUM DECISION AND ORDER - 21

prominent scholars' opinions that American punishment is "comparatively harsh;" (4)

Justice Anthony Kennedy—at an ABA Annual Meeting—stated that sentencing

guidelines should be revised downward; (5) a former Florida AUSA has called the

guidelines "too harsh;" and (6) Attorney General Eric Holder has noted that "too many

Americans go to too many prisons for far too long." *Id*. pp. 8–13. Saltzer's claim that Mr.

Peterson's's failure to point out these opinions somehow rises to ineffective assistance of

counsel is absurd. This is not binding precedent that Mr. Peterson failed to point out, but

commonly known statistics and excerpts from scholarly articles and ABA meetings.

And, contrary to Saltzer's assertion, Mr. Peterson did argue that the advisory

guidelines were greater than necessary to achieve the purposes of sentencing under §

3553(a). As Mr. Peterson points out in his affidavit:

> At page 1, I urged the court that Mr. Saltzer's sentence should be "the type
> and length . . . that is sufficient, not greater than necessary to comply
> with . . . § 3553(a)." I did the same at page 2, identifying the four purposes
> set forth at§ 3553(a)(2). At page 9, I urged the court to impose a sentence
> "less than thirty-years [which] can fulfill all the objectives of a just
> sentence, and leave open the possibility that Mr. Saltzer can return to a life
> with meaning and service." I reiterated the message on page 10—that a
> "sentence in the range of 180 months fulfills the objectives of promoting
> respect for the law and provides just punishment for this offense." At page
> 11—"A sentence of 180 months is more than adequate . . . ." At page 14 I
> argued that in view of Mark's "acceptance of responsibility, his history of
> service as a social worker and the others matters set out . . . a sentence . . .
> of 180 months is sufficient to meet the goals of punishment, rehabilitation,
> deterrence and protection of society." I did the same on page 18. In
> simplest terms, I did what they suggest should have been done.

To conclude, Mr. Peterson did argue that the Guidelines as applied to this case

were too long. Pointing out that many scholars, prosecutors and judges have opined that

American punishment is comparatively harsh would have—without a doubt—made no difference whatsoever in Saltzer's sentence. Accordingly, neither *Strickland* prong is satisfied and this claim must fail.

       7.   <u>Nature of Saltzer's crime</u>

Seventh, Saltzer argues that Mr. Peterson was ineffective in failing to argue that the nature of Saltzer's crimes would subject him to physical and sexual abuse in prison. Saltzer again claims that Mr. Peterson was ineffective for not pointing the Court to various sources indicating that sex offenders are particularly vulnerable to physical and sexual abuse in prison. Again, failing to cite specifically to certain studies, law review articles, and non-controlling case law does not rise to the level of ineffective assistance of counsel. As far as controlling authority goes, Saltzer makes two arguments: (1) that Mr. Peterson should have argued USSG § 5H1.4 authorized the Court to consider Saltzer's physical appearance as warranting a downward departure; and (2) Mr. Peterson was ineffective in failing to cite to *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2002). Each argument will be discussed in turn.

First, USSG § 5H1.4 provides:

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines.

USSG § 5H1.4. Perhaps Mr. Peterson did not argue for a departure under this provision because there is nothing unusual or distinguishable about Saltzer's physical condition or

**MEMORANDUM DECISION AND ORDER - 23**

appearance. At the time of sentencing, Saltzer was forty-six years-old, standing approximately 5'10" tall and weighing approximately 170 pounds. He reported being in good health, with no history of mental or emotional problems, and no history of alcohol dependence or abuse. Saltzer most certainly does not possess any physical conditions that are present to an unusual degree, or somehow distinguishes his case from other typical cases. In sum, this provision could not be more inapplicable. Accordingly, neither *Strickland* prong is satisfied under this argument.

Second, in *Parish*, a plurality held that the district court did not abuse its discretion when it departed downward eight levels, on two grounds: (1) the defendant's conduct fell outside the "heartland" of the offense of possessing child pornography; and (2) the defendant was unusually susceptible to abuse by other inmates in prison because of his stature, demeanor, naiveté, and the nature of the offense. Saltzer does not argue that his conduct somehow fell outside the "heartland" of the offenses charged; rather, he argues that his homosexuality, physical appearance, and gentle, non-threatening demeanor are additional factors that make him "prey for aggressive inmates." Civ. Dkt. 1, p. 14.

Mr. Peterson was not ineffective for failing to cite to *Parish*, because as the Government points out, *Parish* can be easily distinguished. Central to the district court's decision in that case was its finding that Parish's conduct was "less culpable" and "outside the heartland" of child pornography *possession* cases. *Parish*, 308 F.3d at 1028. Here—in stark contrast—Saltzer's conduct was very much within the heartland of child pornography *production* cases. Indeed, his conduct was even more culpable than most.

MEMORANDUM DECISION AND ORDER - 24

As stated, Saltzer's case involved hands-on molestation of multiple victims, child pornography production with numerous victims, and distribution of that pornography to a vast network of other child pornographers. In sum, none of the authorities Saltzer cites to suggest that the failure to raise this argument violates *Strickland*'s performance standard. Simply put, it does not.

Furthermore, no prejudice resulted from Mr. Peterson's failure to argue Saltzer's homosexuality, physical appearance, gentle demeanor, and the nature of the offense make him more of a target in prison. At the time of sentencing, the Court considered the history and characteristics of the defendant. *See* U.S.C. § 3553(a)(1). The Court noted:

> Turning to the defendant's history and characteristics, the defendant is a 46-year-old male. He has never married nor does he have any children. He has no prior criminal history of any type, no substance abuse history of any type. The defendant is well-educated and has maintained significant employment as a counselor, was also employed—I was going to say ironically but I don't think "irony'" is the right term—as a counselor providing sex therapy treatment for offenders and victims and as a school counselor. The defendant had no prior mental health diagnosis or substance abuse history to consider. He comes from a family well established in the Treasure Valley, very well respected, and from a very accomplished family I might add.

*Sent. Trans.*, Civ. Dkt. 9-2, pp. 42, ll. 24–5; p. 43, ll. 1–10.

Saltzer's homosexuality, physical appearance, and demeanor were simply not factors that warranted noting, let alone factors that warranted a departure. Moreover, it is common knowledge that sex offenders face an elevated risk of abuse in prison. But this factor "is equally present for all similarly situated sex offenders who face prison sentences" and is therefore not unusual. *See United States v. Stoterau*, 524 F. 3d 988,

**MEMORANDUM DECISION AND ORDER - 25**

1013 (9th Cir. 2008) ("mere membership in a class of offenders that may be targeted by other inmates," is insufficient grounds for a downward departure) (*citing United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir. 1997) (reversing a downward departure for susceptibility to abuse in prison that was based on defendant's status as a child pornographer)). In short, Mr. Peterson's failure to raise these factors with the Court did not change the outcome of the proceeding and no prejudice occurred. Accordingly, this claim is also dismissed.

        8. Cumulative errors

Lastly, Saltzer contends that all of these errors, looked at cumulatively, constitute ineffective assistance of counsel.

The Ninth Circuit recognizes the concept of cumulative errors resulting in prejudice where no one error alone is prejudicial. *See Mak v. Blodgett,* 970 F.2d 614, 622 (9th Cir.1992). *See also Harris v. Wood,* 64 F.3d 1432, 1438–39 (9th Cir.1995); *United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996). However, that concept does not apply where the alleged errors are not errors at all. *See United States v. Lindsay,* 634 F.3d 541, 555 (9th Cir.2011). The Court has found none here.

## CONCLUSION

Dismissal of all of Saltzer's ineffective assistance of counsel claims requires further comment. *Strickland* directs the Court to "eliminate the distorting effects of hindsight" to the extent possible and to evaluate the challenged conduct "from counsel's

**MEMORANDUM DECISION AND ORDER - 26**

perspective at the time." *Strickland*, 466 U.S. at 690. Recognizing the difficulty of doing

so, *Strickland* explained further:

> [A] court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the circumstances,
> the challenged action "might be considered sound trial strategy." There are
> countless ways to provide effective assistance in any given case. Even the
> best criminal defense attorneys would not defend a particular client in the
> same way.

*Id.* (citations omitted) (emphasis added).

As shown above, virtually all of the acts and omissions of which Saltzer complains

were the result of strategic decisions generally left to counsel and not to the demands of a

client. But a difference of opinion regarding tactical decisions is not proof of ineffective

assistance of counsel. *See Cox v. Ayers*, 613 F.3d 883, 893 (9th Cir.2010) (*citing United

States v. Mayo*, 646 F.3d 369, 375 (9th Cir.1981) (per curiam)).

## CERTIFICATE OF APPEALABILITY

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion

unless he has first obtained a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R.

App. P. 22(b).  A certificate of appealability will issue only when a movant has made "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To

satisfy this standard when the court has dismissed a § 2255 motion (or claims within a

§ 2255 motion) on procedural grounds, the movant must show that reasonable jurists

would find debatable (1) whether the court was correct in its procedural ruling, and (2)

whether the motion states a valid claim of the denial of a constitutional right.  *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's rulings on Saltzer's motion to be debatable or wrong. Accordingly, a certificate of appealability will not issue.

## ORDER

**IT IS ORDERED:**

1. Defendant Saltzer's Motion to Vacate/Set Aside/Correct Sentence Pursuant to 28 U.S.C. § 2255 (Civ. Dkt. 1) is **DENIED**.

2. Saltzer's Motion to Seal (Civ. Dkt. 2) is DISMISSED as **MOOT**.

3. No certificate of appealability shall issue.  Saltzer is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1.  To do so, he must file a timely notice of appeal.

4. If Saltzer files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.  The district court's file in this case is available for review online at www.id.uscourts.gov.



DATED: December 8, 2015

B. Lynn Winmill
Chief Judge
United States District Court