UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK ALAN SALTZER,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 1:14-cv-00451-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Mark Alan Saltzer's Motion for Relief (Civ. Dkt. 23) from the Court's December 8, 2015 Memorandum Decision and Order (Civ. Dkt. 14; Crim. Dkt. 53) and Judgment (Civ. Dkt. 16; Crim. Dkt. 54) pursuant to Fed. R. Civ. P. 60(b)(6). For the reasons discussed below, the Court will dismiss the motion for lack of jurisdiction.

## BACKGROUND

In August of 2012, Mr. Saltzer was arrested and charged in state court with ten counts of Sexual Exploitation of Children—each of which carried a maximum punishment of thirty years in prison. *Dec. 8, 2015 Mem. Decision and Order* at 1, Civ. Dkt. 14. Mr. Saltzer's lawyer, Charles Peterson, negotiated a deal on Saltzer's behalf whereby Mr. Saltzer would cooperate fully with federal investigators, and plead guilty to the federal charges. *Id.* at 2. In exchange, the state charges were dismissed. *Id.* On July

30, 2013, pursuant to a Rule 11(c)(l)(B) plea agreement, Mr. Saltzer pleaded guilty to an Information that charged him with one count of Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a). *Id.* On November 12, 2013, Mr. Saltzer was sentenced by the Court to 348 months' incarceration, based on a guideline range of 324–360 months, followed by 20 years of supervised release. *Id.* at 3.

Mr. Saltzer did not file an appeal from the sentence, but instead, on October 23, 2014, brought a 28 U.S.C. § 2255 motion to vacate his sentence based upon a claim of eight grounds of ineffective assistance of counsel. *Id.* (see Civ. Dkt. 1 and Crim. Dkt. 49). On December 8, 2015, this Court denied Mr. Saltzer's § 2255 motion and declined to issue a certificate of appealability. *Id.* at 28; *see also Dec. 16, 2015 Judgment*, Civ. Dkt. 16. Mr. Saltzer then sought a certificate of appealability from the Ninth Circuit, which was denied, and then a writ of *certiorari* from the Supreme Court, which was also denied (Civ. Dkts. 20 and 22).

On March 20, 2017, Mr. Saltzer filed the instant motion seeking relief from this Court's December 8, 2015 decision (Civ. Dkt. 23). Mr. Saltzer argues that the Court should revisit its sentencing decision because a newly discovered email shows that both the prosecutor and Mr. Peterson incorrectly analyzed his sentencing exposure at the plea stage. *Petitioner's Br.* at 1, Dkt. 23. This incorrect analysis, according to Mr. Saltzer, led Mr. Peterson to advise Mr. Saltzer to reject the initial joint stipulated plea agreement of

293 months in favor of a nonbinding plea deal.[1] *Id.* at 3. Mr. Peterson allegedly reasoned that this would "provide [the] Court greater flexibility in light of Defendant's substantial assistance," and "informed [Mr. Saltzer] that because of the 5k1.1 reduction, he would not face a sentence greater than [293 months], and he could in fact receive a sentence closer to the 180-month minimum under § 2251(a)." *Id.* As a result, Mr. Saltzer was surprised when the prosecution sought "the statutory maximum of 360 months," and when he ultimately received a sentence five years longer than the length of the sentence he would have received if he had accepted the stipulated plea agreement. *Id.* at 3-4.

In support of his motion, Mr. Saltzer points to an April 4, 2013 email from the prosecutor, AUSA Jim Peters, to Mr. Peterson, which Mr. Saltzer obtained from Mr. Peterson on August 17, 2016, while he was in the course of preparing for his petition to the Supreme Court. *Id.* at 4. The email states, in full:

> Chuck – I ran an estimate of the guidelines form [sic] Mark Saltzer and found myself at Level 47. Of course, there is no Level 47, so I reached out to a probation officer in Pocatello – one who won't be writing Saltzer's PSR – and asked him how they would handle a hypothetical situation like his. You can see my message and his response below.[2]

---

[1] Mr. Peterson stated in his Jan. 28, 2015 affidavit, submitted as part of the government's response to Mr. Saltzer's original § 2255 motion (see Civ. Dkt. 9-1), that he "advised Mr. Saltzer that if he rejected the proposed limitation, the United States would argue for the maximum sentence of thirty (30) years," but that Mr. Saltzer "rejected the offer because he wanted the opportunity to ask for less than twenty (20) years" and "reasoned that the Court would look upon his years of service to the community and sentence him to less than the proposed joint sentencing recommendation." *Petitioner's Br.* Appendix P.10 ¶ 29, Dkt. 23. Mr. Peterson "disagreed and told [Mr. Saltzer] so, but [Mr. Saltzer] willingly accepted the risk of a thirty (30) year sentence." *Id.*

[2] These were also included in Mr. Peterson's email to Mr. Saltzer.

> Based on that response, I think Saltzer will start at Level 43 – which would be Life.
>
> If he pleads guilty, he'd be credited for acceptance of responsibility, and that would reduce it to Level 40, which would be 292-365 months. Then, take off one level for cooperation[3] (he hasn't given them anything that resulted in the prosecution of others, but he did identify some victims they didn't know about) and his range is 262-327 or roughly 21.8 to 27.25 years.
>
> I think a sentence roughly in the middle of that range, say 25 years, would be appropriate under these circumstances. He'd probably get credit for the time he has served in state custody, and so with good time could be out in about 20.
>
> Hoping to talk with you about this tomorrow, and see if we can get this put away so Ada County doesn't have to prep for trial.
>
> And FYI, this is just an "invitation to treat" as they say in law school. Final deal will be in a written plea agreement, and have to be approved by Aaron.

*Id.*; *Appendix* at 1-2, Civ. Dkt. 23-1. However, Mr. Saltzer states that "basic research" would have shown that the correct starting level was 47, not 43.[4] *Id.* at 5. Ultimately, "Defendant's sentencing exposure under the Guidelines was miscalculated by AUSA Peters, and counsel relied on this miscalculated range when advising Defendant to reject the offered binding plea at the high end of that range." *Id.* at 5-6. According to Mr.

---

[3] The government ultimately recommended a two-level downward departure. *See Petitioner's Br.* at 3, Dkt. 23; *Gov. Resp.* at 4-5, Dkt. 24.

[4] The government concedes that the AUSA's explanation "turned out to be inaccurate," explaining that "[i]n the Presentence Investigation Report, the Probation Officer subtracted three levels from an offense level of 52, and the guidelines range was determined based on the maximum offense level in the sentencing table: 43." *Gov. Resp.* at 4-5, Dkt. 24. However, the government argues that the AUSA's email is nonetheless "consistent with the stipulated plea agreement that [Mr. Saltzer] rejected" because the proposed agreement "called for a joint recommendation of 293 months (24 years and 5 months)" and the AUSA reached a similar figure in his email: "I think a sentence roughly in the middle of that range, say 25 years, would be appropriate . . . ." *Id.* at 5.

Saltzer, this email also refutes Mr. Peterson's claim that he advised Mr. Saltzer to accept the joint sentencing recommendation. *Id.* at 4. Finally, Mr. Saltzer argues that because this email was not previously available to the Court, and because Mr. Peterson's affidavit to the Court was "incomplete," "extraordinary circumstances" caused a defect in the integrity of the proceedings and justify relief under FRCP 60(b)(6). *Id.* at 7.

The government argues that this Court lacks jurisdiction because Mr. Saltzer's motion is not a legitimate Rule 60(b) motion, but rather a "disguised second or successive motion under § 2255." *Gov. Resp.* at 2, Dkt. 24. It also contends that even if the Court had jurisdiction, the newly discovered email does not provide a basis for disturbing the Court's prior ruling under Rule 60(b). *Id.* at 3. Finally, the government claims that Mr. Saltzer's motion is untimely under both § 2255 and Rule 60(b). *Id.*

## LEGAL STANDARD

Federal prisoners claiming the right to be released on the grounds that their sentence violates the Constitution or laws of the United States may file a motion under 28 U.S.C. § 2255. "As a general rule, § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008). If the district court denies the relief sought in the § 2255 motion, the prisoner may not appeal that denial without first obtaining a certificate of appealability under 28 U.S.C. § 2253(c)(1)(B). To obtain this certificate, the prisoner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2), (3).

Additionally, prisoners are generally limited to one motion under § 2255, and may not bring a "second or successive motion" unless it meets the exacting standards of 28 U.S.C. § 2255(h). Section 2255(h) provides that such a motion cannot be considered unless it has first been certified by the court of appeals to contain either "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h). Federal Rule of Civil Procedure 60(b) allows a party to seek relief from a final judgment, and request reopening of his case under a limited set of circumstances including fraud, mistake, and newly discovered evidence. Fed. R. Civ. P. 60(b). Subsection (b)(6) permits reopening when the movant shows "any . . . reason justifying relief from the operation of the judgment" other than the more specific circumstances set out in Rules 60(b)(1)-(5). *Id.* 60(b)(6).

When faced with a motion under Rule 60(b), district courts are tasked with ascertaining whether the motion is a "true" Rule 60(b) motion, or whether it is a disguised second or successive § 2255 motion. *See Washington*, 653 F.3d at 1059-60. Although the Supreme Court has not established a bright-line rule for spotting true Rule 60(b)(6) motions, it has held that a motion attacking some defect in the integrity of the habeas proceedings qualifies. *See id.* (discussing *Gonazlez*, 545 U.S. 524, 523 (2005)). Such defects may include "fraud on the habeas court" and allegations that a previous

ruling precluding a merits determination, such as denial for failure to exhaust, procedural default, or a statute-of-limitations bar, was in error. *Jones v. Ryan*, 733 F.3d 825, 834 (9th Cir. 2013) (citing *Gonazlez*, 545 U.S. at 532 nn. 4-5 (2005)). On the other hand, if a motion presents one or more "claims," "in effect ask[ing] for a second chance to have the merits determined favorably," it is properly construed as a second or successive § 2255 motion, not a Rule 60(b) motion. *Id.* at 835.

Rule 60(b)(6) should be used "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.,* 984 F.2d 1047, 1049 (9th Cir. 1993). Accordingly, the Rule allows relief only when a party can establish that "extraordinary circumstances prevented [it] from taking timely action to prevent or correct an erroneous judgment." *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005). Specifically, the party must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion." *Id.*

## ANALYSIS

1.  **Second or Successive § 2255 Motion**

For the reasons set forth below, Mr. Saltzer's motion constitutes a successive or second § 2255 petition. Mr. Saltzer concedes that he is "not claiming actual innocence or a change of law applicable to a second § 2255 [petition]." *Petitioner's Br.* at 8, Dkt. 23. Therefore, the Court lacks jurisdiction over Mr. Saltzer's motion and must deny it.

First, Mr. Saltzer fails to "point to something that happened during the proceeding that rendered its outcome suspect," as required to show a "defect in the integrity" of his first § 2255 proceeding. *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011). Mr. Saltzer makes much of the fact that the Court did not know of the newly discovered email at the time it decided his § 2255 claim. *See, e.g.*, *Petitioner's Br.* at 8, Dkt. 23 ("Habeas counsel's failure to discover the emails precluded use of this information during the habeas proceedings."); *Petitioner's Reply* at 8-9, Dkt. 27 ("the habeas Court never had an opportunity to consider how counsel's misunderstanding caused injury to the Defendant by erroneously advising [him] to reject the first plea agreement"). However, he does not explain how this lack of knowledge rendered the Court's decision suspect. In fact, Mr. Saltzer concedes that "the final outcome on Claim 3[5] would be the same, regardless of the new information," and "on its own, this new information does not rise to the 'magnitude that production of it earlier would change the disposition of the case' under the meaning of Rule 60(b)(2)." *Petitioner's Reply* at 3, Civ. Dkt. 27; *Gov. Br.* at 8-9, Civ. Dkt. 23.

---

[5] "Claim 3" refers to the third ground for Mr. Saltzer's claim of ineffective assistance of counsel: failure to object to the government's breach of the plea agreement. *Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255* at 5, Civ. Dkt. 1. Mr. Saltzer referenced two of the grounds for ineffective assistance of counsel in his briefs in support of his Rule 60(b) motion: the third ground and the sixth ground (failing to argue that the guidelines sentences were longer than necessary to achieve a just sentence). *Id.* at 8; *see also Petitioner's Reply* at 2, 8, Civ. Dkt. 27.

Rather, Mr. Saltzer relies on a series of largely unsupported assumptions linking the email to the Court's decision: that Mr. Peterson accepted the email's calculation of the starting level as accurate without conducting research to verify it,[6] that it was the reason why he advised Mr. Saltzer to reject the initial plea offer, that Mr. Saltzer would have accepted the initial plea offer if he or Mr. Peterson had known of the correct starting level, and that the Court would have granted Mr. Saltzer's § 2255 motion if it had known of its effect on Mr. Peterson's advice and Mr. Saltzer's decision regarding the initial plea offer. Thus, even accepting Mr. Saltzer's version of disputed facts,[7] he has not satisfied his burden of showing that the outcome of the § 2255 proceeding would have been different had the Court known of the newly discovered email at the time it made its decision.

Second, Mr. Saltzer's claim does not match any of the examples of "defect[s] in the integrity of the federal habeas proceedings" recognized in *Gonzales*. Mr. Saltzer does not allege that the Court erroneously issued a ruling that precluded a merits determination. While he does claim that Mr. Peterson's failure to mention the newly discovered email in his affidavit constitutes fraud upon the Court, *see Petitioner's Br.* at

---

[6] Mr. Saltzer claims that Mr. Peterson did not reply to the email with a correction, which "is evidence that he too believed the AOR is always taken from 43, regardless of whether any proposed agreement was a joint stipulated one or not." *Petitioner's Reply* at 6, Dkt. 27.

[7] These include whether Mr. Peterson advised Mr. Saltzer to accept the initial plea offer (see Footnote 1, above) and whether the reason that Mr. Saltzer declined the initial plea offer because he wanted to seek a sentence of no longer than twenty years. *Compare Gov. Resp.* at 11, Civ. Dkt. 24 (citing Mr. Peterson's statement in his affidavit that Mr. Saltzer rejected the initial plea offer "because he wanted the opportunity to ask for less than twenty (20) years") *with Petitioner's Reply* at 7, Civ. Dkt. 27 (stating that his "total offense level was so high, he was obviously precluded from a sentence under 20 years").

8, Civ. Dkt. 23 ("the incomplete statements by counsel on his affidavit . . . represent an element of fraud on the Court"), Mr. Saltzer fails to show that this omission was made intentionally and in bad faith. *See United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011) ("We have explained that '[f]raud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'") (citing *Gumport v. China Int'l Trust & Inv. Corp.* (*In re Intermagnetics Am., Inc.*), 926 F.2d 912, 916 (9th Cir. 1991)). Furthermore, "an attack based on . . . habeas counsel's omissions . . . ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." *Gonzalez*, 545 U.S. at 532.

Third, and finally, Mr. Saltzer fails to show how lack of knowledge about the email undercuts the integrity of the prior proceeding with regard to any of the claims he raised there. *See Jones v. Ryan*, 733 F.3d at 836 ("[T]he rule announced in *Gonzalez,* that a valid Rule 60(b) motion 'attacks . . . some defect in the integrity of the federal habeas proceedings,' . . . must be understood in context generally to mean the integrity of the prior proceeding with regard to the *claims that were actually asserted* in that proceeding.") (emphasis added). Here, Mr. Salzter references two of the grounds for ineffective assistance of counsel that he raised in the § 2255 proceeding (see Footnote 5, above), but Mr. Saltzer provides no explanation for how the newly discovered email

shows that the integrity of the decision-making process to resolve them was undermined.[8] It is unlikely that he could do so, given that, as the government points out, neither of those claims were related to plea negotiations or calculations of the sentencing guidelines range. For that reason, the newly discovered email is not a true attack on the integrity of the proceeding in which that claim was denied. Rather, it is more like "newly discovered evidence" in support of his previously denied ineffective assistance of counsel claim, and effectively asks for a "second chance" to have the merits on that claim decided in his favor. Therefore, Mr. Saltzer's motion is outside the scope of Rule 60(b), and must be dismissed for lack of jurisdiction.[9]

## 2.  Rule 60(b)(6) Motion

However, even if this Court had jurisdiction, it would deny Mr. Saltzer's motion because the newly discovered emails do not constitute "extraordinary circumstances" justifying relief under Rule 60(b)(6). Mr. Saltzer has not demonstrated "injury" as required to prevail under Rule 60(b)(6) because, as explained above, he has not shown that the outcome would have been different if the Court had known of the newly discovered email when it decided his § 2255 claim.

---

[8] Mr. Saltzer states in a footnote that he raised the issue of Mr. Peterson's alleged misunderstanding and faulty advice in his habeas motion. *See Petitioner's Br.* at 4 n.1, Civ. Dkt. 23. However, he provided no citation, and the Court did not find such a discussion in his brief in support of his § 2255 motion. *See* Civ. Dkt. 23; Crim. Dkt. 49.

[9] Because the Court dismisses Mr. Saltzer's claim on this basis, it need not address the government's timeliness arguments.

Furthermore, even accepting Mr. Saltzer's version of the facts as true, he has not shown that his attorney's conduct approached the level of negligence by attorneys that courts have found to constitute "extraordinary circumstances." The Court has already explained that Mr. Peterson's alleged conduct did not rise to the level of "fraud upon the Court." Another accepted basis for Rule 60(b)(6) motions is gross negligence by a petitioner's attorney, defined as "neglect so gross that it is inexcusable." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). Courts have held that such neglect occurred, for example, where an attorney "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so." *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002*), as amended on denial of reh'g and reh'g en banc* (Apr. 24, 2002). Similarly, an attorney was found to have committed gross negligence where he "deliberately misled" his client by, among other things, telling her that her case was moving forward even after it had been dismissed. *Lal*, 610 F.3d at 524 (9th Cir. 2010).

Here, Mr. Saltzer does not allege that Mr. Peterson "abandoned" him, and does not alleged that Mr. Peterson's reliance on the email and erroneous advice was anything other than a mistake. He alleges that Mr. Peterson's decision not to reference the email in his affidavit was misleading, but as explained above, that omission did not affect the outcome of the proceedings because Mr. Saltzer made no claim related to the plea negotiations of Mr. Peterson's calculation of the sentencing range. Thus, even if the Court has jurisdiction to decide Mr. Saltzer's Rule 60(b)(6) motion, it would deny it on

the grounds that Mr. Saltzer has not demonstrated "extraordinary circumstances."

Accordingly,

## ORDER

**IT IS ORDERED** that Mr. Saltzer's Rule 60(b) Motion (Civ. Dkt. 23) is **DISMISSED.**

DATED: August 15, 2018

B. Lynn Winmill
Chief U.S. District Court Judge